**UNITED STATES DISTRICT COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| ***In re*** | **Case No. CIV 04-603-S-BLW** |
| **KEITH S. JOHNSON,** | |
| **Debtor.** | **MEMORANDUM DECISION** |
| **KEITH S. JOHNSON,** | |
| **Appellant,** | |
| **vs.** | **On Appeal From** |
| | **United States Bankruptcy Court** |
| **CHARISE D. (JOHNSON) NELSON,** | **District of Idaho** |
| | **Hon. Terry L. Myers, Bankruptcy Judge** |
| **Appellant.** | **Bankruptcy Adv. Proc. 04-6009** |

Keith S. Johnson ("Johnson") has appealed from the judgment of the bankruptcy court entered in favor of Charise D. (Johnson) Nelson ("Nelson"), on October 29, 2004.

The court having reviewed the briefs and record on appeal has determined that oral argument would not be helpful in the determination of this case and the parties have not requested oral argument.[1/] The matter is submitted for decision on the briefs.

## I – BACKGROUND/JURISDICTION

Keith S. Johnson filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on September 26, 2003, Case No. 03-03579. The case was subsequently converted to a case under chapter 7 and Johnson filed an adversary proceeding to determine the dischargeability of an obligation owed to Johnson arising out of a dissolution of the marriage of the parties. The complaint asserted two causes

---

[1/] *See* FED. R. BANK. P. 8012

of action: (1) that the obligation was not in the nature of alimony or support and was therefore not excepted from discharge under § 523(a)(5);[2/] and (2) alternatively as an obligation other than an obligation in the nature of support or alimony it was not excepted from discharge under §523(a)(15).

The matter came on for a bench trial before the bankruptcy court. The court entered its Memorandum Decision and a final judgment in favor of Nelson, holding that the obligation owed to Nelson was in the nature of alimony or support and excepted from discharge under §523(a)(5). Alternatively, the bankruptcy Court held that the obligation, even if not in the nature of alimony or support, was excepted from discharge under §523(a)(15). Johnson filed a timely notice of appeal and Nelson timely objected to reference of the appeal to the Bankruptcy Appellate Panel.

This court has jurisdiction under 28 U.S.C. § 158(a)(1), (c)(1)(A).

## II – ISSUES PRESENTED AND STANDARD OF REVIEW

In this appeal, the court must decide whether the bankruptcy court erred in finding that an obligation arising out of an agreement made as part of the proceedings dissolving a marriage but was not incorporated into the divorce decree entered by the state court was an obligation in the nature of alimony or support excepted from discharge under §523(a)(5). If the court finds the bankruptcy court erred in making that determination, the court must then decide whether the bankruptcy court erred in it alternative determination that the obligation was except from discharge under §523(a)(15).

On an appeal to the district court from the bankruptcy court the standard of review is clearly erroneous for factual questions and *de novo* for legal questions and mixed questions of fact and law.[3/]

---

[2/] Unless otherwise indicated, references to Code sections in this decision are references to the Bankruptcy Code, Title 11, United States Code, in effect prior to amendment by the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005," PUB. LAW 109-8.

[3/] *See Murray v. Bammer* (*In re Bammer*), 131 F.3d 788, 792 (9th Cir. 1997) (en banc).

## III – FACTS [4/]

Johnson and Nelson were married in September, 1983. Their marriage lasted almost 20 years. During that time, they had five children, and adopted another.

Johnson has a high school education and, about 6 years after graduation, became a licensed electrician. He neither had nor ran any business at the time of the marriage in 1983. However, he developed several businesses and financial interests over the course of the marriage. They are discussed further below. He worked exceedingly hard at the businesses; Nelson's characterization was that Johnson regularly worked 80 hour weeks. Johnson and his business endeavors were quite successful.

Nelson also had a high school education. After graduating, she went to beauty school arid obtained a cosmetology license. She worked as a cosmetologist for about a year before marrying Johnson in 1983. During the course of the marriage, Nelson did not work outside the home except for providing sporadic and very limited secretarial-type assistance to Johnson. This occurred at the parties' home except for a couple of months in the 1990's. She was essentially a full-time mother and homemaker for the duration of the parties' marriage.

Johnson filed a divorce action in July 2002. Both Johnson and Nelson were represented by counsel, arid there was a lengthy arid vigorous process to resolve the disputes in or related to the divorce. This included a great deal of correspondence between counsel and, at times, between the parties themselves. * * * *

On April 10, 2003, a negotiated and agreed Judgement and Order of Divorce was entered by the state court. * * * * It provided for joint physical and legal custody of the minor children. One minor son primarily resided with Johnson, as did another son who was approaching his 18th birthday. Three minor children resided primarily with Nelson. Under the Decree, Johnson was to pay child support to Nelson in specifically described amounts "based upon imputed income to [Johnson] from his businesses of $50,000 per year and [Nelson's] part-time income imputed at fulltirne [*sic*] for a total of $10,970 per year."

The Decree awarded certain real property to Johnson, along with the corresponding secured debt. Other real property was to be sold, with the net proceeds divided equally between the parties. Johnson was awarded all the parties' businesses and business interests, including all

[4/] The facts are taken from the Memorandum of Decision rendered by the bankruptcy court. (Footnotes and internal citations to the record are omitted).

assets and liabilities of those businesses. * * * * Johnson was required to exercise due diligence to eliminate Nelson's liability on any business obligations. The value of the businesses, net of debt, was the subject of much debate at trial. However, what was not debated was that the businesses were capable of generating substantial income and had, in fact done so throughout the parties' marriage. There were no other sources of income. Johnson was assigned substantial community debt, and required to hold Nelson harmless. Nelson was assigned responsibility for post-separation debts she incurred.

Regarding the question of spousal support, the key dispute in the instant dischargeability litigation, the Decree provided:

> 18. SPOUSAL SUPPORT: Keith is ordered to pay spousal support to Charise consistent with a separate contract between the parties. Said contract is not merged nor incorporated into this Order but a copy is attached for the Court's review.

The referenced and attached "Spousal Support Agreement" (hereafter "Agreement") provided in material part:

> 1. SPOUSAL SUPPORT PAYMENTS: Keith shall pay to Charise spousal support in the amount of $1,600.00 per month commencing May 1, 2003, and continuing on the 1st day each month thereafter for a total of One Hundred Eight (108) monthly payments, the last one of which shall be paid on April 1, 2012. Provided, however, the spousal support payments will terminate earlier in the event of Wife's death. Said payments shall not terminate in the event of Wife's remarriage. The parties intend that these payments be taxable to wife and deductible by husband.
>
> 2. AGREEMENT NOT TO BE MERGED: This Agreement shall remain a separate contract between Keith and Charise. The agreement shall not be merged or incorporated into the divorce decree.
>
> 3. ATTORNEY FEES: In the event Charise is required to initiate any action to enforce this agreement, she shall be entitled to an award of attorney's fees incurred in that action
>
> 4. INSURANCE: Keith shall maintain a decreasing term life insurance policy on his life with Charise named as beneficiary sufficient to cover the balance of the spousal support owed to Charise. This shall remain in effect until Keith has paid all spousal payments due to Charise under this agreement. Keith shall provide to Charise at least

annually proof that the insurance is in effect with the proper beneficiary designation. Keith shall obtain from the insurance company a statement that the policy will not be cancelled and the beneficiary designation will not be changed without prior written notice to Charise.

5. SECURITY: To secure the payments owed under this agreement, Keith shall provide to Charise a lien on the real property located at 1815 American Legion Blvd, and 1295 American Legion Blvd., Mt. Home, Idaho.

The parties agree that, because the Agreement was not merged into the Decree, the Agreement could not be modified by either Johnson or Nelson, regardless of the changes in financial circumstances that might occur.

The terms of the Decree and the Agreement were the result of the negotiations of the parties arid their legal counsel. On February 7, 2003, Nelson's counsel proposed a Spousal Support Agreement that provided for payment of $1,800.00 per month for 96 months to Nelson.

That same day, Johnson's accountants provided him with a statement of financial condition as of December 31, 2002. The parties' discussions and negotiations continued thereafter until the final form of the Agreement was reached, and it was executed about two months later on April 8, 2003.

On September 26, 2003, Johnson filed a voluntary petition for relief under chapter 13. Schedules filed on October 10 showed $10,450.00 per month in income, and $9,850.00 per month in expenses, including the $1,600.00 per month to Nelson. Johnson's proposed chapter 13 plan contemplated 42 monthly payments of the $600.00 excess income.

## IV – DISCUSSION

A. *Discharge under §523(a)(5)*.

Section 523(a)(5) excepts from discharge an obligation owed:

to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been

> assigned to the Federal Government or to a State or any political subdivision of such State); or
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support . . .

Although Johnson argues that because under the general view exceptions to discharge are to be strictly construed, the term "support" in §523(a)(5) should be strictly construed against Nelson. The prevailing view as applied to §523(a)(5) is to the contrary. As stated in one leading treatise:[5/]

> In determining whether a particular debt falls within one of the exceptions of section 523, the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor. Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system. One exception to this principle of statutory construction is found in section 523(a)(5), in which the term "support" has been given a broad construction by most courts to promote the congressional policy that favors enforcement of obligations for spousal and child support. In this respect, Congress has overridden the general bankruptcy policy in which exceptions to discharge are construed narrowly.

As the Ninth Circuit has stated:[6/]

> The § 523(a)(5) exception to discharge strikes a balance between competing policies. On the one hand, the goal of providing a fresh start to the bankrupt debtor requires that exceptions to discharge be confined to those plainly expressed. On the other hand, this court has recognized an overriding public policy favoring the enforcement of familial obligations.

Initially, the court notes that Johnson misreads §523(a)(5). Johnson, focusing on the language "determination made in accordance with State or territorial law by a governmental unit," argues that (1) the obligation must be alimony under state law and (2) have been determined as such by a governmental entity. Johnson cites no authority for this position. Section 523(a)(5) reads in the disjunctive, not the conjunctive. A "determination made in accordance with State or territorial law by a governmental unit"

---

[5/] 4 KING, COLLIER ON BANKRUPTCY, ¶¶ 523.05; 523.11 (15th ed. Rev. 2005).

[6/] *Beaupied v. Chang* (*In re Chang*), 163 F.3d 1138, 1140 (9th Cir. 2000) (internal quotation marks and citations omitted).

is but one of the four means by which a spousal support obligation may be created. It may also be established by a separation agreement, divorce or court decree, or a property settlement agreement.[7] The law is clear in this circuit that whether or not an obligation is in the nature of spousal support is a factual matter determined by the bankruptcy court under federal law.[8] Therefore, to the extent that Johnson's argument is premised upon a theory that the obligation would not be spousal support under Idaho law or that an Idaho divorce court would not award spousal support in the amount and for the duration as was agreed to by the parties in this case, it is irrelevant to the issues before this court.

In this appeal the court must address the following questions: (1) are the factual findings of the bankruptcy supported by the evidence in the record; and (2) did the bankruptcy court correctly apply those facts to controlling federal law. For the following reasons, the court finds that both questions must be answered in the affirmative.

Johnson's argument, other than as noted above with respect to the construction of §523(a)(5), is essentially "the bankruptcy judge should have accepted my evidence, not hers." In particular, Johnson focuses on the expert testimony of David Goss that was principally to the effect that *under Idaho law*, the Idaho courts would not have awarded Nelson spousal support as was agreed to by the parties. The weight and credibility of expert testimony is within the province of the trier of fact; they are not the proper subject of review by the appellate courts.[9] Moreover, as noted, above, the issue is whether the obligation constitutes spousal support under federal law, not state law. The testimony of Goss was, therefore, irrelevant.

---

[7] *See Reiter v. Sonotone Corp*. 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise; ..."). The context of §523(a)(5) clearly does not dictate otherwise.

[8] *In re Chang, supra*; *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984).

[9] *D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co.*, 692 F.2d 1245, 1248 (9th Cir. 1982); FED. R. BANK. P. 8013.

In determining whether an obligation is in the nature of support under federal law, the intent of the parties at the time that the agreement was made controls.[10] In ascertaining this intent, courts look at and weigh several factors, the presence or absence of any of which are not necessarily dispositive. In its thorough and well reasoned Memorandum Decision, the bankruptcy court correctly identified and considered those factors.

Disparity of income. The evidence of the relative incomes of Johnson and Nelson at the time the agreement was made is somewhat sketchy. The parties stipulated that for the purposes of determining child support under Idaho law, the "imputed" annual income of Johnson was $50,000 and that of Nelson $10,970. In briefs filed in this appeal, Johnson acknowledges that at the time of the divorce, the earning capacity of Johnson was two to four times that of Nelson.[11] A rational fact finder could infer from this that, at the time the agreement was made, there was a large imbalance in the relative income of the parties and Nelson required spousal support. This factor strongly supports a finding that the parties intended the obligation to be in the nature of spousal support.[12]

Label given by the parties. In this case, the parties have labeled the obligation "SPOUSAL SUPPORT." This also strongly supports an indication of an intent that the obligation be in the nature of support.[13]

Payments in monthly increments over a lengthy period of time. The agreement requires payments in monthly increments over a period of 108 months (nine years). This is also indicative of support.[14]

---

[10] *Shaver v. Shaver, supra*; *Seixas v. Boothe* (*In re Seixas*), 239 B.R. 398, 402 (9th Cir. B.A.P. 1989).

[11] The court also notes that six months after the agreement was made, Johnson filed schedules under penalty of perjury in the underlying bankruptcy case stating that his income was $10,450 per month ($125,400 per year), two and half times higher than the "imputed income."

[12] *Sternberg v. Friedman* (*In re Sternberg*), 85 F.3d 1400, 1406 (9th Cir. 1996), *overruled on other grounds*, *In re Bammer, supra*.

[13] *Id*.

[14] *Id.*

Income taxable to Nelson. The fact the agreement provided that the payments would be deductible to Johnson and taxable income to Nelson is a very strong indication that the parties intended the obligation to be in the nature of support.[15/] Moreover, even if the reverse were true, *i.e.*, taxable to Johnson and not to Nelson, that factor would not be dispositive.[16/]

The payments survive the remarriage of Nelson. While this factor tends to support a finding that the payments were not in the nature of support, it is not dispositive.[17/]

The amounts are not modifiable by either party. This factor also tends to undercut the characterization as support, but is not dispositive.[18/]

Johnson also asserts that divorce counsel for Nelson entitled the award as "Spousal Support" to thwart any attempt by Johnson to discharge a property settlement obligation by filing bankruptcy which she knew was contemplated. Thus, Johnson argues, the denomination as "Spousal Support" does not support a finding of a support obligation but, rather "an ingenious scheme to ensure Appellant's continued payment without either the family court or the bankruptcy court's intervention" or "to subvert the authority of the family court," which is inequitable. Not only does Johnson misstate the holding of the primary authority relied on, *In re Evert*,[19/] but it is neither controlling nor applicable. First, contrary to the assertion of Johnson, *Evert* did not concern the interpretation of §523(a)(5), it involved the interpretation of §522(d)(10)(D). Second, the facts in *Evert* differed significantly from the facts in the case at bar. The Fifth Circuit declined to apply the same factors used in defining spousal support under §523(a)(5)

---

[15/] Some courts have held that where the debtor has availed himself of the tax benefits of a characterization as alimony the doctrine of quasi-estoppel precludes the taking of a contrary position in seeking to prevent exception from discharge in bankruptcy. *See e.g., Robb-Fulton v. Robb* (*In re Robb)*, 23 F.3d 895, 898–99 (4th Cir. 1994).

[16/] *In re Sternberg, supra*.

[17/] *Id*.

[18/] *Id*., at 1407.

[19/] *Milligan v. Evert* (*In re Evert)*, 342 F.3d 358 (5th Cir. 2003).

(dischargeability) to defining spousal support under §522(d)(10)(D) (exemption) in that case. In so doing the Fifth Circuit held:[20]

> We hold only that, at least for purposes of section 522(d)(10)(D), where in the agreed divorce decree there is 1) also a meaningful separate alimony provision, 2) the obligation in question is described as being part of the property division, 3) the label given to the obligation in question is matched by its actual characteristics, and 4) the evidence does not suggest the parties conspired to disguise the true nature of the obligation in order to subvert the bankruptcy or tax laws, there is no ambiguity necessitating the use of the *Nunnally* factors to essentially work backwards to determine the nature of the obligation. Because we conclude that that is the situation here, we reverse.

Contrary to Johnson's arguments, the fact that the parties were aware Johnson was contemplating bankruptcy, the labeling as spousal support, an obligation not dischargeable in bankruptcy, to which Johnson acquiesced, supports a finding that the parties intended it to be support.[21] Moreover, to the extent that Johnson is implicitly arguing that because the support obligation did not terminate upon remarriage of Nelson, was non-modifiable, and expressly excluded from incorporation into the divorce decree somehow violates a strong public policy of Idaho, Johnson errs. Idaho courts do enforce such agreements,[22] which they would not do if such agreements were contrary to the public policy of Idaho.[23]

Johnson also argues that the bankruptcy court erroneously shifted the burden to him to establish that the debt was a disguised property settlement agreement. Johnson mischaracterizes the decision of the bankruptcy court in this regard. The bankruptcy court, based on the evidence before it, did no more than determine that it was not a disguised property settlement agreement excluding a finding that it was in the nature of support. In particular Johnson's argument focuses on the accountant's valuation that

[20] 342 F.3d at 368.

[21] *In re Sternberg*, at 1406, note 4.

[22] *See e.g., Foster v. Schorr*, 82 P.3d 845, 848 (Idaho 2003) (upholding enforcement of an agreement to pay maintenance under similar facts).

[23] *Hyta v. Finley*, 53 P.3d 338, 341 (Idaho 2002) ("The courts will not enforce the agreement if it is illegal or contrary to public policy.").

the value of the parties' interest in the businesses was $340,000. Johnson argued that because $172,800 is approximately one-half this value, it tended to establish that the spousal support was a disguised property settlement. As pointed out by Nelson at trial, the accountant's valuation on its face showed it was for the interest of each of the parties, not the parties combined. Johnson argues that since this "mistake" allegedly was not discovered by Johnson until trial, it should not have been considered because the intent of the parties is to be determined at the time the agreement was made, not at the time of trial. The bankruptcy court stated (footnote omitted):

> Moreover, Johnson's resolute testimony about the importance of the accountant's analysis, and the linkage between the net worth figures in Exhibit 3 and the amount of the "spousal support" obligation, impact the weight to be given his testimony about the actual intent of the parties. His credibility was not enhanced when the suggested reliance proved faulty.

This clearly and unequivocally shows that the court was assessing Johnson's credibility on the issue of the parties' intent at the time the agreement was made. This argument, as with other arguments advanced by Johnson in this appeal, simply goes to the weight of the evidence or the credibility of the witnesses. As noted above, these are uniquely within the province of the trial court and factual findings of the trial court are not to be overturned unless the reviewing court is left with a firm conviction that a mistake has been made.[24/] Such is not the case before the court in this appeal.

In sum, the bankruptcy court's finding that the parties intended to create a spousal support obligation is plausible in light of the evidence that Nelson needed support, the parties labeled the obligation "spousal support," the payments were deductible to Johnson and taxable to Nelson, and the payments were in monthly increments over a period of nine years. "While other evidence arguably supports an inference that the parties intended the obligation to be a property settlement, it is not the province of the appellate court to reweigh the evidence and choose between competing inferences."[25/]

---

[24/] *Weyerhaeuser v. Atropos Island*, 777 F.2d 1344, 1349 (9th Cir. 1985).

[25/] *In re Sternberg*, 85 F.3d at 1407.

B. *Discharge under §523(a)(15)*.

Having determined that the bankruptcy court did not err in finding that the obligation was in the nature of alimony or support, it is unnecessary to reach the alternative ruling by the bankruptcy court that the obligation was nonetheless excepted from discharge under §523(a)(15). However, even if the bankruptcy court erred in determining that the obligation was in the nature of alimony or support, it correctly held that the obligation was nevertheless excepted from discharge under §523(a)(15). That section, as in effect at the time the case was filed, provided that an obligation was excepted from discharge if it is:

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

Johnson advances the same argument concerning the necessity for the debt to have arisen out of a divorce decree or other court order determined in accordance with state law as he did with respect to §523(a)(5). That argument fails here for the same reasons it did as applied to §523(a)(5).

Once Nelson established that the obligation was incurred in connection with the parties' divorce proceeding, a fact that is not contested by Johnson, it was presumptively excepted from discharge unless rebutted by one of the exceptions enumerated in §523(a)(15)(A) or (B).[26] Johnson has the burden of proof as to both

---

[26] *See Jodoin v. Samayoa* (*In re Jodoin*), 209 B.R. 132, 140 (9th Cir. BAP 1997).

exceptions.[27] The bankruptcy court's decision that Johnson had not borne his burden is supported by the record. Johnson does not point to any evidence in the record that establishes he does not have the ability to pay. Indeed, the only evidence, the schedules of income and expenses Johnson filed in the main bankruptcy proceeding, clearly indicate that an ability to pay exists. As the bankruptcy court stated, it is self-evident that a discharge of the substantial obligation owed to Nelson would benefit Johnson. What is lacking, as the bankruptcy court also aptly noted, is any evidence that this benefit would outweigh the detriment that would befall Nelson if the debt were discharged. At best, the evidence on that point is inconclusive. The bankruptcy court found: "What evidence does exist points to a substantial detriment to Nelson, and Johnson has not shown that the Court should require her to bear that detriment because of his situation or the potential benefit of discharge." That finding is not clearly erroneous and can not be disturbed on appeal.

## V – CONCLUSION

For the foregoing reasons the judgment of the bankruptcy court is **AFFIRMED**.

The Clerk of the Court to enter a final judgment accordingly.[28]

Dated October 26, 2005

s/ Ralph R. Beistline
RALPH R. BEISTLINE
United States District Judge

---

[27] *Graves v. Mryvang* (*In re Myrvang*), 232 F.3d 1116, 1121 (9th Cir. 2000), *In re Jodoin*, 209 B.R. at 141.

[28] FED. R. BANK. P. 8016.